IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No.  07 C 229 |
| v. ) | |
| ) | HONORABLE DAVID H. COAR |
| CHICAGO TRANSIT AUTHORITY, ) | |
| ) | |
| **Defendant.** ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Union Pacific Railroad Company ("Union Pacific" or "Plaintiff") has brought this declaratory action for preemption and injunction against Defendant Chicago Transit Authority ("CTA" or "Defendant") under 49 U.S.C. § 10101 et seq.  Before this Court is Defendant's motion to dismiss (Docket No. 16).  For the reasons stated below, the motion is DENIED.

### FACTS[1]

Starting in 1959, Union Pacific (or its predecessor entity) leased a portion of an elevated right of way running east and west between Harlem Avenue and Laramie Avenue in the city of Chicago.  Throughout that time CTA used the underlying section of track for its commuter rail service.  On July 16, 2006, Defendant offered to purchase a "perpetual easement" in the right of way for $7,564,400.00.  This offer was rejected.  Defendant then initiated eminent domain

---

[1]These facts are derived from the Plaintiff's complaint and, for the purposes of this motion, are assumed to be true with all reasonable inferences made in favor of the Plaintiff. *Patel v. City of Chicago*, 383 F.3d 569, 572 (7th Cir.2004).

-1-

proceedings in the Illinois Commerce Commission ("IlCC") to condemn the leased portion of the right of way.

On January 12, 2007, Plaintiff filed this motion seeking to enjoin the IlCC proceedings. The parties have agreed to forego their state level remedies pending resolution of the case before this Court.

## STANDARD OF REVIEW FOR MOTION TO DISMISS

On a motion to dismiss, the Court accepts all well-pleaded allegations in the plaintiff's complaint as true. Fed. R. Civ. Plaintiff. 12(b)(6). The purpose of a 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). A complaint should not be dismissed "unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

A complaint that complies with the Federal Rules of Civil Procedure cannot be dismissed because it fails to allege facts. The Rules require simply that the complaint state a claim; they do not require the complaint to plead facts that would establish the validity of that claim. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). "All that need be specified are the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Id.* (citing *Beanstalk Group, Inc. v. AM General Corp.*, 283 F.3d 856, 863 (7th Cir. 2002)). The Seventh Circuit has held that stating a claim in a complaint in federal court requires only "a short statement, in plain (that is, non-legalistic) English, of the legal claim." *Kirksey v. R.J. Reynolds*

*Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999). Plaintiffs "don't have to file long complaints, don't have to plead facts, don't have to plead legal theories." *Id.*

## ANALYSIS

In its motion to dismiss, Defendant claims that Federal preemption of the IlCC proceedings is unwarranted because: (1) ICCTA does not give STB jurisdiction over this matter; (2) the requested relief is improper under the anti-injunction act; (3) the Younger doctrine requires the state body to proceed; and (4) declaratory relief is more properly pursued through the IlCC. *See generally* Def.'s Dismiss Mem. Plaintiff predictably disagrees, claiming that the ICCTA preempts the state proceeding in its entirety, and that the STB has properly asserted its jurisdiction over similar cases.

It should be noted that this Court is not considering the appropriateness of condemnation of the land in question, but rather the more preliminary determination of who should decide the appropriateness of that action – whether the matter is to be settled by Federal authority under ICCTA or allowed to proceed through the state's IllCC process.

    a.    <u>ICCTA Preemption</u>

In its current form, ICCTA grants the STB broad jurisdiction over both rail transportation and rail facilities. *See generally* 49 U.S.C. § 10501. "The Interstate Commerce Act is among the most pervasive and comprehensive of federal regulatory schemes." *Chicago and N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 318, 101 S.Ct. 1124, 1130 (1981). According to its explicit terms, the Act displaces any state or local effort at regulation or oversight regarding railway tracks:

> The jurisdiction of the Board over...the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team,

>switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State...is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b)(2).

Most importantly for the instant case, however, is the fact that the STB has explicitly asserted its jurisdiction regarding "condemnation to take rail property for another use that would conflict with...[railroad] use." *City of Creede Petition for Declaratory Order*, 2005 WL 1024483, at *4-5 (S.T.B. 2005) (surveying cases in which state eminent domain processes were preempted by federal courts and the STB). Condemnation of railway property, then, is subject to ICCTA preemption so long as the action would have an impact on interstate rail operations. *See, e.g., Maumee & W. R.R. Corp. Petition*, 2004 WL 395835, at *2 (S.T.B. 2004). As the STB stated in Maumee:

>Courts have held that Federal preemption can shield railroad property from state eminent domain law, but these holdings have been in situations where the effect of the eminent domain law would have been to prevent or unreasonably interfere with railroad operations....But neither the court cases, nor the Board's precedent, suggest a blanket rule that any eminent domain action against railroad property is impermissible. Rather, routine, non-conflicting uses, such as non-exclusive easements for at-grade road crossings, wire crossings, sewer crossings, etc., are not preempted so long as they would not impede rail operations or pose undue safety risks.

*Id.* Therefore, in order to decide ICCTA preemption here, this Court need only determine whether the potential condemnation would interfere with Plaintiff's interstate commerce operations.

Plaintiff refers to the alleged interference that would result from the state-level assertion of eminent domain in rather broad terms, stating only that its contractual rights under the lease –

which it would allegedly lose under outright condemnation – are "integral to the safe, efficient, and economic operation of Union Pacific's interstate freight rail transportation system." Compl. ¶ 14. Defendant claims that this is insufficient, and that Union Pacific should be required to establish that such interference will actually occur. However, at this stage of the proceedings Plaintiff need not establish that the facts support its case, but must simply properly allege the necessary factors that support the claim. *See Gibson*, 910 F.2d at 1520. In this instance, Union Pacific has alleged that the condemnation would interfere with its interstate rail operations.

While Defendant correctly points out that there is some evidence that no negative impact would result – i.e., the fact that the CTA has operated using the right of way for fifty years without any apparent interference with Plaintiff's work, and its assertion that all of Plaintiff's leasehold rights other than rent would remain – Plaintiff is not yet required to prove its case but need only give its opponent proper notice of it. Union Pacific has done this to a sufficient degree to survive a motion to dismiss. *See* Pl.'s Resp. at 8 ("The proposed condemnation directly conflicts with Union Pacific's current and future use of critical railroad operating property, including joint facilities necessary for railroad operations and the space above and below the right of way.").

      b.    <u>Applicability of ICCTA's Mass Transportation Exception</u>

Similarly, Defendant claims that CTA is a local mass transportation body and therefore is exempted from ICCTA. See 49 U.S.C. § 10501(c)(2) ("[T]he [Surface Transportation] Board does not have jurisdiction under this part over mass transportation provided by a local government authority."). Again, however, Defendant overstates its case.

Though the dispute now before this Court centers on actions being taken by the CTA, the effect of those actions may expand beyond the local, municipal scope that might otherwise be encompassed by the ICCTA exception. *See generally U.S. v. Union Stockyards & Transit Co. of Chicago*, 226 U.S. 286, 33 S.Ct. 83 (1912). Section 10501(c) removes STB jurisdiction over "mass transportation provided by a local governmental authority," with the term "mass transportation" defined as "transportation by a conveyance that provides regular and continuing general or special transportation to the public." *See* 49 U.S.C. § 10501(c)(1)(B) (incorporating the definitions of 49 U.S.C. § 5302(a)(7), which in turn references 49 U.S.C. § 5302(a)(10)). While CTA's general operations no doubt fall within this exception, by moving beyond mere service and into the forcible transfer of land they invoke the protections of interstate rail carriers that permeates ICCTA.

The cases cited by Defendant evidence this distinction; as CTA itself states, "these decisions are relevant and applicable because these are instances in which the STB itself decided that it did not have jurisdiction when local government authorities provided mass transportation *over a portion of tracks owned by rail carriers.*" Def.'s Reply at 11 (referencing *Transit Solutions Group*, 2006 WL 560758 (S.T.B. 2006) and *Massachusetts Bay Commuter Railroad Co., LLC*, 2003 WL 21359920 (S.T.B. 2003)). These citations are inapposite where the instant case centers on the ownership of the tracks themselves.

Defendant focuses on its own status as a municipal mass transportation operator – and the inherently localized nature of its operations – in challenging the application of ICCTA in light of section 10501(c)(2). If this were simply a matter of the CTA and the transportation services it provides, ICCTA would not apply and preemption would be inappropriate. However, the

proposed assertion of eminent domain involves the track itself, which is a part of the interstate rail network and therefore falls under the exclusive jurisdiction of the STB. *See* 49 U.S.C. § 10501(b). A local change to the physical nature of the railway system is not subject to the STB's prior approval under 49 U.S.C. 10901 if there is no effect on: (1) service to shippers; (2) the carrier's territory or traffic; (3) competition; or (4) the carrier's revenue or operating expenses. *Sacramento Regal Transit Dist.*, 2000 WL 893421, at *2 (S.T.B. 2000). This court must therefore consider the potential effect of the considered action on Union Pacific. Again, Plaintiff has not proven that the condemnation of this right of way will in fact impact Union Pacific in any way. However, at this stage of proceedings it is sufficient that Defendant has alleged that it will do so.

Therefore, for all of the reasons stated above, Defendant's pursuit of condemnation does not qualify as mass transportation by a local governmental authority under the ICCTA.

    c.    <u>Anti-Injunction Act</u>

The Anti-Injunction Act ("AIA") provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by [an] Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283. By its terms, therefore, the AIA only precludes injunctive interference with court proceedings at the state level, *Kerr-McGee Chemical Corp. v. City of West Chicago*, 914 F.2d 820, 824 (7th Cir. 1990), and allows for only three exceptions to the broad prohibition on state court injunctions: (1) those expressly authorized by an Act of Congress; (2) where necessary in aid of a federal court's jurisdiction; and (3) to "protect or effectuate" a federal court judgment, 28 U.S.C. § 2283. The Anti-Injunction Act does "not preclude injunctions against the

-7-

institution of state court proceedings, but only bar[s] stays of suits already instituted ." *Dombrowski v. Pfister*, 380 U.S. 479, 484 n. 2 (1965).

The anti-injunction act is to be broadly read, but only protects state *court* proceedings. The IlCC, however, is an administrative agency with only a limited appeals process. *People ex rel. Hartigan v. Illinois Commerce Comm'n*, 148 Ill.2d 348, 366-67, 592 N.E.2d 1066, 1074 (1992). Therefore, the anti-injunction act does not apply. Defendant attempts to avoid this outcome by citing extensively to Illinois's Eminent Domain Act, 735 ILCS 30/1 et seq, and maintaining that it is "within the ambit of a state court proceeding." *See* Def.'s Reply at 11-12. However, IlCC involvement under the Act is a precursor, not a component of, state court consideration of eminent domain in Illinois. Defendant points out that the IlCC serves an a gateway to further proceedings, but this does not alter the fact that the IlCC is not itself a "State court." As Defendant itself states, "[b]efore a condemnation proceeding concerning a railroad is commenced in state court, the IllCC acts as a gatekeeper." Therefore, enjoining the IllCC process cannot amount to interference with state court proceedings that, by definition, can only begin after the IllCC administrative proceedings have concluded.

  d. <u>Younger Doctrine</u>

Under the Younger abstention doctrine, in the absence of extraordinary circumstances, a federal court will not exercise jurisdiction if such exercise would interfere with an ongoing state court proceeding. *Younger v. Harris*, 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971). The Younger doctrine requires that a federal court exhibit "comity," that is, a "proper respect for state functions." *Id.* at 44. Where vital state interests are involved, a federal court should abstain "unless state law clearly bars the interposition of the constitutional claims." *Moore v. Sims*, 442

U.S. 415, 426, 99 S.Ct. 2371, 2379, 60 L.Ed.2d 994 (1979). Courts considering the application of the Younger doctrine should consider three factors "(1) the judicial or judicial in nature state proceedings must be on-going; (2) the proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state court proceeding to raise constitutional challenges." *Barichello v. McDonald*, 98 F.3d 948, 955 (7th Cir. 1996) (citing *Trust & Inv. Advisers, Inc. v. Hogsett*, 43 F.3d 290, 295 (7th Cir. 1994)). This doctrine "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188, 79 S.Ct. 1060, 3 L.E.2d 1163 (1959).

There can be little doubt that the state's power to assert eminent domain, standing alone, represents an important state interest. *Dist. of Columbia v. 109,205.5 square feet of land*, 2005 WL 95745, at *5 (D.D.C. 2005) (citing Capitol Hill Hosp. v. Dist. of Columbia, 769 F.Supp. 16, 19 (D.D.C. 1991). However, Federal preemption effectively undermines a state interest where the state's jurisdiction is removed. *See Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1272-73 (9th Cir. 1994) (finding that "readily apparent" preemption precludes significant state interest). The state interest should not be gauged according to the specific outcome of the case at hand, but rather in light of the more general enforcement interests involved. *See New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 365, 109 S.Ct. 2506, 2516 (1989) ("[W]hen we inquire into the substantiality of the State's interest in its proceedings we do not look narrowly to its interest in the outcome of the particular case – which could arguably be offset by a substantial federal interest in the opposite outcome. Rather, what we look to is the importance of the generic proceedings to the State."). Therefore, the ultimate question in this

instance is not whether eminent domain should be decided in state proceedings, but rather whether the dispensation of railroad property should be.  In enacting ICCTA, the Federal government has answered this question with a resounding no.

In this instance, Federal preemption is most likely appropriate and any state court proceeding would essentially have no effect.  This is not to say that Federal preemption trumps Younger considerations in every instance.  *See Midwestern Gas Transmission Co. v. McCarty*, 270 F.3d 536, 539 (7th Cir. 2001).  However, taking the Complaint's allegations as true, this case invokes the Federal regulation of interstate rail and effectively undermines the state's interest in asserting jurisdiction.  *See id.* ("Mere defiance of clear federal law removing an area from potential state regulation is not such an interest.").

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED.


Enter:


/s/ David H. Coar
_____
David H. Coar
United States District Judge

Dated: **April 20, 2007**